# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

| | | |
|---|---|---|
| JULIE STEVESON and JALAND BURTON, individually and on behalf of all others similarly situated; | ) ) ) ) | Civil No.  3:20-cv-00027 |
| Plaintiffs, | ) | COLLECTIVE AND CLASS ACTION |
| v. | ) | COMPLAINT |
| | ) | |
| TERRACE CAFE, LLC, TERRACE CAFE OF BALLANTYNE, LLC, and STEWART PENICK, in his individual capacity, | ) ) ) ) ) | |
| Defendants. | | |

Plaintiffs, Julie Steveson ("Steveson") and Jaland Burton ("Burton") (collectively "Plaintiffs"), by and through counsel, bring this action for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) and the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. §§95.25.1 *et. seq.*, against Defendants Terrace Cafe, LLC ("TC"), Terrace Cafe of Ballantyne, LLC ("TCB"), and Stewart Penick ("Penick") (collectively "Defendants").

## NATURE OF PLAINTIFF'S CLAIMS

1.      This lawsuit seeks to recover unpaid minimum wages, reimbursement of withheld tips, and statutory penalties for Plaintiffs and any similarly situated co-workers including servers and bartenders ("Tipped Workers") who worked at TC located at 4625 Piedmont Row Dr, Charlotte, NC 28210 or TCB located at 14815 Ballantyne Village Way, Suite 150, Charlotte, NC 28277.

2.	Plaintiffs bring this action on behalf of themselves and all similarly situated former Tipped Workers who elect to opt-in to this action pursuant to the collective action provision of 29 U.S.C. § 216(b) to remedy violations of the FLSA by TC and TCB.

3.	Plaintiffs brings this action on behalf of themselves and all similarly situated employees pursuant to Federal Rules of Civil Procedure Rule 23 to remedy NCWHA claims against Defendants resulting from Defendants' willful failure to timely pay Plaintiffs all regular wages earned by Plaintiffs on their scheduled paydays, including the next regular payday following the termination of Plaintiffs' employment.

## THE PARTIES

4.	Steveson is an adult individual who is a resident of Charlotte, North Carolina.

5.	Steveson was employed by Defendants TC and Penick from in or about March 2012 until November 6, 2019. Steveson's Consent to Become a Party Plaintiff form is attached hereto as Exhibit A.

6.	Burton is an adult individual who is a resident of Charlotte, North Carolina.

7.	Burton was employed by Defendants TCB and Penick from in or about May 2019 until November 8, 2019. Burton's Consent to Become a Party Plaintiff form is attached hereto as Exhibit B.

8.	TC is a domestic limited liability company registered and in good standing in the State of North Carolina, located at 4625 Piedmont Row Dr., Charlotte, NC 28210.

9.	TCB is a domestic limited liability company registered and in good standing in the State of North Carolina, located at 14815 Ballantyne Village Way, Suite 150, Charlotte, NC 28277.

10.	Penick is an adult individual who is a resident of Boone, North Carolina.

## JURISDICTION AND VENUE

11.     This Court has original federal question jurisdiction under 28 U.S.C. § 1331 for the claims brought under the FLSA, 29 U.S.C. § 201 et. seq.

12.     This Court has personal jurisdiction because Defendants conduct business in Mecklenburg County, North Carolina, which is located within this judicial district.

13.     Venue is proper in this judicial district because Defendants have substantial business contacts in this district and because the unlawful acts alleged herein occurred in Mecklenburg County, North Carolina.

14.     Plaintiffs' NCWHA claim is based on the law of the State of North Carolina. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 for the pendent state claims because they arise out of the same nucleus of facts giving rise to Plaintiffs' FLSA claims.

15.     All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness, and convenience for the parties.

## COVERAGE ALLEGATIONS

16.     At all times hereinafter mentioned, Defendants have been an enterprise within the meaning of Section 3(r) of the FLSA 29 U.S.C. § 203(r).

17.     At all times hereinafter mentioned, Defendants have been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that the enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that the enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000.

3

18.    At all times hereinafter mentioned, Steveson was an employee within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

19.    At all times hereinafter mentioned, Burton was an employee within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

20.    At all times hereinafter mentioned, Plaintiffs were individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. § 206.

21.    At all times hereinafter mentioned, Defendants have been an employer within the meaning of Section 95-25.2(5) of the NCWHA, N.C. Gen. Stat. §§ 95-25.2(5).

22.    At all times hereinafter mentioned, Steveson was an employee within the meaning of Section 95-25.2(4) of the NCWHA, N.C. Gen. Stat. §§ 95-25.2(4).

23.    At all times hereinafter mentioned, Burton was an employee within the meaning of Section 95-25.2(4) of the NCWHA, N.C. Gen. Stat. §§ 95-25.2(4).

## PLAINTIFFS' FACTUAL ALLEGATIONS

24.    TC was a restaurant in the SouthPark area of Charlotte, North Carolina that closed for business on or about November 6, 2019.

25.    TCB was a restaurant in the Ballantyne area of Charlotte, North Carolina that closed for business on or about November 8, 2019.

26.    Penick is an owner, member and/or officer of TC and TCB. In this capacity, Penick was involved in the day-to-day business operations of TC and TCB. Penick had the authority to sign on TC and TCB checking accounts, including payroll accounts, and the authority to make decisions regarding wage and hour issues, including compensation practices and policies for Tipped Workers. At all relevant times, Penick acted and had responsibility to act

4

on behalf of, and in the interests of TC and TCB in devising, directing, implementing and supervising the wage and hour practices and policies relating to employees, including the Tipped Worker compensation issues raised in this lawsuit.

27.     Steveson was employed by Defendants TC and Penick as a Bartender at the SouthPark location since in or about March 2012.

28.     Steveson's scheduled workweek began Monday and ended on Friday. Steveson worked an average of 40 hours per workweek.

29.     Steveson's hourly pay rate was $8.00 per hour.

30.     In addition to her hourly pay, Steveson's compensation agreement with TC and Penick included retaining all tips from the customers that she served.  Steveson received approximately $550.00 per week in tips from customers. For example, Steveson earned $566.74 in tips for the week of October 21, 2019 through October 27, 2019.

31.     Defendants paid Steveson on a weekly basis, which included her hourly pay and tips paid via credit card.

32.     TC permanently closed on or about November 6, 2019.

33.     Steveson performed all her scheduled work shifts until TC permanently closed on November 6, 2019.

34.     Defendants TC and Penick failed to pay Steveson her November 3, 2019 paycheck, including her regular hourly pay and tips earned, for the workweeks beginning on October 28, 2019 and ending on November 3, 2019.

35.     Defendants TC and Penick failed to pay Steveson her November 10, 2019 paycheck, including her regular hourly pay and tips earned, for the three days (November 4 - 6, 2019) she worked prior to TC permanently closing on November 6, 2019.

5

36.     Burton was employed by Defendants TCB and Penick as a Server at the Ballantyne location from in or about May 2019 until November 8, 2019.

37.     Burton's scheduled workweek began Tuesday and ended on Sunday. Burton worked an average of 40 hours per workweek.

38.     Burton's hourly rate was $2.13 per hour.

39.     In addition to his hourly pay, Burton's compensation agreement with TCB and Penick included retaining all tips from the customers that he served.  Burton received approximately $500.00 per week in tips from customers. For example, Burton earned $482.80 in tips for the week of October 21, 2019 through October 27, 2019.

40.     Defendants paid Burton on a weekly basis, which included his hourly pay and tips paid via credit card

41.     TCB permanently closed on or about November 8, 2019.

42.     Burton performed all his scheduled work shifts until TCB permanently closed on November 8, 2019.

43.     Defendants TCB and Penick failed to pay Burton his November 3, 2019 paycheck, including his regular hourly pay and tips earned, for the workweek beginning on October 28, 2019 and ending on November 3, 2019.

44.     Defendants TCB and Penick failed to pay Burton his November 10, 2019 paycheck, including his regular hourly pay and tips earned, for the three days (November 6 - 8, 2019) he worked prior to TCB permanently closing on November 8, 2019.

45.     Defendants retained tips earned by the Tipped Workers in violation of the FLSA.

46.     Defendants TC and Penick failed to pay all employees who worked at TC their November 3, 2019 paychecks and their November 10, 2019 paychecks on their regular paydays.

6

47.     Defendants TCB and Penick failed to pay all employees who worked at TCB their November 3, 2019 paychecks and their November 10, 2019 paychecks on their regular paydays.

48.     Defendants have knowledge that Plaintiffs are owed unpaid wages due for the paychecks that should have been paid on November 3, 2019 and November 10, 2019.

49.     Defendants have knowledge that Plaintiffs were not timely paid the paychecks due and payable on November 3, 2019 and November 10, 2019.

50.     Defendants willfully failed to timely pay Plaintiffs the paychecks due and payable on November 3, 2019 and November 10, 2019.

<u>**COLLECTIVE ACTION ALLEGATIONS**</u>

51.     This action is maintainable as an "opt-in" collective action pursuant to the FLSA, 29 U.S.C. § 216(b), as to claims for unpaid minimum wages, liquidated damages, and attorneys' fees and costs.

52.     Pursuant to 29 U.S.C. § 216(b), Plaintiffs bring their First and Second Causes of Action (FLSA claims) on behalf of themselves and similarly situated employees who worked as Tipped Workers at the TC and TCB in Charlotte, North Carolina, and who elect to opt-in to this action ("Opt-in Plaintiffs").

53.     The FLSA § 216(b) collective action class is properly defined as:  All former employees of Defendants who were employed at TC and TCB in Charlotte, North Carolina as servers, bartenders, or their functional equivalents, anytime during the three-year period preceding the filing of the Complaint in this action.

54.     Consistent with Defendants' policy and pattern or practice, Plaintiffs and Opt-in Plaintiffs have not been paid minimum wages for all hours worked.

55.     As part of its regular business practice, Defendants have intentionally, willfully and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and Opt-in Plaintiffs.  This policy and pattern and practice includes, but is not limited to, willfully failing to pay its Tipped Workers, including Plaintiffs and Opt-in Plaintiffs, minimum wages for all hours worked.

56.     Defendants are aware or should have been aware that federal law required them to pay Tipped Workers minimum wages for all hours worked.

57.     Plaintiffs and Opt-in Plaintiffs performed the same basic job duties, were subject to the same employment policies, practices and procedures, and have been subject to the same unlawful practices alleged herein.

58.     Defendants' policy and practice of retaining a portion of the tips given to Tipped Workers by TC and TCB's customers was applicable to and affected all Tipped Workers.

59.     Defendants' unlawful conduct has been widespread, repeated, and consistent.

60.     There are many similarly situated former Tipped Workers who have been denied minimum wage in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.  This notice should be sent to the Opt-in Plaintiffs pursuant to 29 U.S.C. § 216(b).

61.     Those similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records.

## CLASS ACTION ALLEGATIONS

62.     This action is maintainable as a class action pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure pursuant to NCWHA, N.C. Gen. Stat. §§ 95-25.6, 95-25.7. 95025.8 and 95-25.13 for failure to pay promised and earned wages for all hours worked by

8

Plaintiffs and members of the proposed class, unlawful withholding of wages, and failure to comply with the notification requirements of the NCWHA.

63.     Plaintiffs propose for a class consisting of all employees who worked at Defendants' SouthPark and Ballantyne locations during the period October 21, 2019 through November 10, 2019 for purposes of certification under Rule 23.  The proposed class is easily ascertainable.  The number and identity of NCWHA class members are determinable from Defendants' payroll records or records over which they have control, as are the hours assigned and worked, the positions held, and the rates of pay for each class member.

64.     The proposed class is so numerous that the joinder of all such persons is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. While the exact number of class members is unknown to Plaintiffs at this time, upon information and belief, the class is comprised of at least 50 persons.

65.     There is a well-defined commonality of interest in the questions of law and fact involving and affecting the proposed class in that Plaintiffs and all members of the proposed class have been harmed by Defendants' violations of the NCWHA.  The common questions of law and fact include, but are not limited to the following:

> (a)     whether Defendants refused to pay Plaintiff and members of the proposed class promised and earned wages for all hours worked on their regular pay day in violation of NCWHA §§ 95-25.6 and 95-25.7;
>
> (b)     whether Defendants unlawfully withheld wages earned by Plaintiffs and members of the proposed class in violation of NCWHA §§ 95-25.8; and

(c)    whether Defendants' refusal to pay such compensation is in violation of NCWHA.

66.    The claims of Plaintiffs are typical of those claims that could be alleged by any proposed class member and the relief sought is typical of the relief that would be sought by each member of the class in separate actions. All class members were subject to the same compensation practices of Defendants; *i.e.*, refusing to timely pay promised and earned wages and unlawfully withholding promised and earned wages. The compensation policies and practices of Defendants affected all class members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each class member. Plaintiffs and members of the proposed class sustained similar losses, injuries, and damages arising from the same unlawful policies, practices and procedures.

67.    Plaintiffs are able to fairly and adequately protect the interests of all members of the class, and there are no known conflicts of interest between Plaintiffs and members of the proposed class. Plaintiffs have retained counsel who are experienced and competent in both wage and hour and complex class action litigation.

68.    A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all class members is impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions engender. Because the loss, injuries, and damages suffered by each of the individual class members are modest, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual class members to redress the wrongs done to them.

69. Important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for adjudication of individual litigation and claims would be substantially more than if the claims are treated as a class action. Prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the class, establishing incompatible standards of conduct for the Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

## COUNT I

### (Violation of FLSA – Minimum Wages Collective Action)

70. Plaintiffs incorporate by reference Paragraphs 1 through 69 of their Complaint.

71. Count I arises from Defendants' violation of the FLSA, for its failure to timely pay all minimum wages earned by Plaintiffs and similarly situated Tipped Workers.

72. Defendants violated the FLSA by failing to reimburse Plaintiffs and similarly situated Tipped Workers the tips they received from customers.

73. Defendants' violation of the FLSA was willful.

## COUNT II

### (Violation of NCWHA – Unpaid Wages)

74. Plaintiffs incorporate by reference Paragraphs 1 through 73 of their Complaint.

Case 3:20-cv-00027-FDW-DCK   Document 1   Filed 01/14/20   Page 11 of 14

75.     Count II arises from Defendants' failure to pay earned wages for work performed by Plaintiffs and similarly situated Tipped Workers in violation of N.C. Gen. Stat. §§ 95-25.6 and 95-25.7.

76.     Defendants failed to timely pay all wages earned by Plaintiffs and similarly situated Tipped Workers on their regularly scheduled paydays, including the next regular payday following the termination of Plaintiffs' and similarly situated Tipped Workers' employment.

77.     Defendants' violation of the NCWHA was willful.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and all employees similarly situated who joins in this action respectfully request:

a)      An Order that the Defendants file with this Court and furnish to counsel for Plaintiffs a list of all names, telephone numbers, home addresses and email addresses of all Tipped Workers (servers, bartenders, or any other similarly titled position) who worked for Defendants during the last month in which TC and TCB were in business;

b)      An Order authorizing Plaintiffs' counsel to issue notice at the earliest possible time to all Tipped Workers (servers, bartenders, or any other similarly titled position) who worked for Defendants during the last month in which TC and TCB were in business, informing them that this action has been filed, of the nature of the action, and of their right to opt-in to this lawsuit if they were deprived of minimum wages as required by the FLSA;

c)      An Order pursuant to Section 16(b) of the FLSA and the NCWHA finding Defendants liable for unpaid regular and minimum wages due to Plaintiffs (and those

12

who have joined in the suit) and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiffs (and those who have joined in the suit);

d)      An Order pursuant to Federal Rule of Civil Procedure 23 certifying this action as a class action under the NCWHA and designating the above Plaintiffs as representatives on behalf of all those similarly situated Tipped Workers;

e)      An Order pursuant to the NCWHA finding Defendants liable for unpaid regular wages and liquidated damages equal in amount to the unpaid compensation due to Plaintiffs and the class;

f)      An Order awarding the costs of this action;

g)      An Order awarding reasonable attorneys' fees;

h)      A Declaration and finding by the Court that Defendants willfully violated provisions of the FLSA and the NCWHA by failing to comply with the statutory requirements regarding timely payment of minimum wages and regular paychecks, respectively;

i)      An Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law; and

j)      An Order granting such other and further relief as may be necessary and appropriate.

## **JURY TRIAL DEMAND**

Plaintiffs demand a trial by jury for all issues of fact.

13

Respectfully submitted,


/s/ Geoffrey A. Marcus
Geoffrey A. Marcus, NCSB #54907
Philip J. Gibbons, Jr., NCSB #50276
Craig L. Leis, NCSB #48582
**GIBBONS LEIS, PLLC**
14045 Ballantyne Corporate Place, Ste 325
Charlotte, North Carolina 28277
Telephone:     (704) 612-0038
Fax:              (704) 612-0038
E-Mail:  geoffrey@gibbonsleis.com
              phil@gibbonsleis.com
              craig@gibbonsleis.com

14